[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 13, 2004
THOMAS K. KAHN
CLERK

_____

No.  02-16722

_____

District Court Docket No. 01-00197-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERTO ANTONIO MARTE,
a.k.a. Martes Rosa,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

(January 13, 2004)

Before EDMONDSON, Chief Judge, CARNES, Circuit Judge, and MILLS*,
District Judge.

_____

* Honorable Richard Mills, United States District Judge for the Central District of Illinois,
sitting by designation.

CARNES, Circuit Judge:

Roberto Antonio Marte appeals his conviction under 8 U.S.C. § 1326 for attempted illegal reentry into the United States following deportation. His principal contention on appeal is that 8 C.F.R. § 212.2 either authorized his conduct or rendered § 1326 unconstitutionally vague. Marte also raises contentions about the district court's granting of two government motions in limine and about the sufficiency of the evidence to convict him. Finding none of his arguments persuasive, we affirm.

## I.

Marte, a citizen of the Dominican Republic, legally entered the United States in 1990, lived in New York with his family, and became a legal permanent resident. In December 1994, he was convicted of sale of a controlled substance in the third degree, which is an aggravated felony for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii). After serving approximately a year and a half in prison, Marte was released into the custody of the Immigration and Naturalization Service.[1] The INS had obtained a warrant of deportation from an immigration judge, and on July 4, 1996, Marte was escorted to the airport by two INS agents and put on a flight out of the United

---

[1] The INS is now called United States Citizenship and Immigration Services. It was called INS at all times relevant to this appeal, so that is how we will refer to it.

States.

Before leaving on the deportation flight, Marte read and signed an INS notice in his native Spanish. It informed him that he could not seek readmission to the United States without first obtaining the Attorney General's permission and listed the offices to which he could write to seek such approval. After Marte's deportation, his mother and sister relocated to the Orlando, Florida area.

Approximately four and a half years later, on February 4, 2001, Marte arrived at Miami International Airport on a one-way ticket from the Dominican Republic and presented himself to an immigration officer. Marte showed the primary immigration inspector his valid Dominican passport, his genuine but expired Form I-551 Alien Registration Statement ("green card"), and his one-way ticket from Santo Domingo to Miami. He also presented a customs declaration form listing his country of citizenship as the Dominican Republic, his country of residence as the United States, and his address in the United States as "Kissimmee, Orlando, Florida." Marte never disclosed that he had been deported or that he did not have permission to apply for reentry. After the primary immigration inspector scanned Marte's green card into the computer and discovered that he was a prior deported felon, he sent Marte for a secondary inspection.

At that point, a senior inspector confirmed that an immigration judge had

ordered Marte's deportation in 1996 because of his aggravated felony conviction. He checked Marte's immigration file and found no indication that Marte had permission to apply for reentry as required by 8 U.S.C. § 1326. The inspector also obtained a certificate of nonexistence of record from the main INS records office, which confirmed that Marte did not have permission to apply to reenter the United States. During this secondary inspection, Marte admitted that he had previously been deported, but he never disclosed that he lacked permission to apply for reentry and never requested the form necessary to apply for such permission. Marte was arrested and charged with attempted illegal reentry in violation of 8 U.S.C. § 1326.

Before trial, the government filed a motion in limine, which Marte opposed, to preclude testimony relating to Marte's specific intent in presenting himself at Miami International Airport. Concluding that attempted illegal reentry is a general intent crime, the district court granted the government's motion. A jury trial of the case began on September 10, 2001, but a mistrial was declared because of the terrorist attacks on September 11, 2001.

Before the retrial, the government presented a second motion in limine to preclude a defense based on 8 C.F.R. § 212.2. Marte opposed this motion and moved to have 8 U.S.C. § 1326 declared unconstitutionally vague. He argued that when read in conjunction with the regulations, the statutory provision did not give clear notice of the conduct that was prohibited and allowed for arbitrary

4

enforcement. The court granted the government's second motion in limine. Then or thereafter, the court also refused to declare § 1326 unconstitutional.

Marte subsequently waived trial by jury, and the case was tried to the bench. The district court found Marte guilty of attempted illegal reentry into the United States in violation of 8 U.S.C. § 1326.

## II.

Marte's first contention, and the one which his attorney calls the "central point" of this appeal, is that his conviction violates due process because 8 C.F.R. § 212.2 either authorized his conduct or is unconstitutionally vague. Specifically, Marte asserts that § 212.2 is an implementing regulation, and the district court erred in applying § 1326 without looking to the regulation.

When a regulation implements a statute, the regulation must be construed in light of the statute, see Hodgson v. Behrens Drug Co., 475 F.2d 1041, 1047 (5th Cir. 1973)[2], but where a regulation conflicts with a statute, the statute controls, see Legal Environmental Assistance Found., Inc. v. EPA, 118 F.3d 1467, 1473 (11th Cir. 1997).

## A.

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all published decisions of the former Fifth Circuit issued before October 1, 1981.

As for Marte's contention that his conduct was authorized, the statute under which he was convicted provides, in relevant part, that:

any alien who–

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States . . . the Attorney General has expressly consented to such alien's reapplying for admission . . .

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a). Standing alone, that statutory provision is not unconstitutionally vague. See United States v. Palacios-Casquete, 55 F.3d 557, 560-61 (11th Cir. 1995). Because Marte had been deported, the statute plainly required him to obtain the Attorney General's express consent to reapply for admission "prior to his reembarkation" in the Dominican Republic to come to Miami.

The question, then, is whether the regulation affects the meaning and application of § 1326 in this case. Marte directs us to 8 C.F.R. §§ 212.2(f) and (i) for his first argument. Section 212.2(f) provides:

Within five years of the deportation or removal, or twenty years in the case of an alien convicted of an aggravated felony, an alien may

6

request permission at a port of entry to reapply for admission to the United States. The alien shall file the Form I-212 with the district director having jurisdiction over the port of entry.

8 C.F.R. § 212.2(f). Section 212.2(i) states: "[i]f the alien filed a Form I-212 . . . at a port of entry, the approval of the Form I-212 shall be retroactive to . . . [t]he date on which the alien embarked or reembarked at a place outside the United States . . . ." 8 C.F.R. § 212.2(i)(1)(i). Together, these provisions mean that if an alien files a Form I-212 at a port of entry and is granted permission to apply for reentry, § 212.2(i) operates to make that permission retroactive to the time of the alien's "reembarkation at a place outside the United States," so that the alien does not violate § 1326 when he goes through the authorized procedure to apply for entry. See 8 U.S.C. § 1326(a)(2)(A).

Marte's problem is he made no attempt to file a Form I-212 that, if approved, would have given him the Attorney General's consent, retroactive to the date of his embarkation in the Dominican Republic, to apply to enter this country. He says that does not matter because § 212.2 is an implementing regulation that must be read in conjunction with § 1326, and that §§ 212.2(f) and (i) authorized his conduct. We disagree.

Even assuming that the § 212.2 regulation implements the § 1326 statutory provision, the regulation does not authorize a deported alien to come to a port of

7

entry and attempt to enter the United States without filing a Form I-212. If the regulation authorized such conduct, it would render any deported alien found at a port of entry immune from criminal liability under § 1326 and would conflict with the clear language of § 1326 requiring that the Attorney General expressly consent to the alien's reapplying for admission. See 8 U.S.C. § 1326(a)(2)(A). As we have already noted, where a regulation conflicts with a statute the regulation yields, not the statute.

**B.**

Marte contends in the alternative that §§ 212.2(f) and (i) of the regulations, when read in conjunction with § 1326 of the code, did not give him clear notice that his conduct would violate § 1326, thus allowing for arbitrary enforcement of that statutory provision against him. In other words, he says that it is unconstitutionally vague. The void-for-vagueness doctrine requires that a penal statute "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." United States v. Fisher, 289 F.3d 1329, 1333 (11th Cir. 2002) (citation and internal quotation omitted), cert. denied, 537 U.S. 1112, 123 S. Ct. 903 (2003). "Except where First Amendment rights are involved, vagueness challenges must be evaluated in the light of the facts of the case at hand."

<u>Id</u>.

In the light of the facts of the case at hand, the regulatory provisions are not impermissibly vague. Section 212.2(f) gave Marte notice that if he had not already obtained the Attorney General's permission before presenting himself at a port of entry, he would need to file a Form I-212 in order to comply with § 1326 and the regulation. <u>See</u> 8 C.F.R. § 212.2(f). He did not attempt to do so. Even if due process concerns counseled against requiring a deported alien to gamble on the approval of a Form I-212 filed after he presented himself at a port of entry, those concerns lack any nexus to the facts of this case.

In a related point, Marte complains that instead of arresting him the INS should have given him a Form I-212 to complete in order to bring him into compliance with § 1326. However, the INS is not required to take affirmative steps to bring an alien into compliance with § 1326 before enforcing the statute against him. It was Marte's duty to comply with the statute, not the INS's duty to prevent him from violating it. Had Marte from the beginning revealed his true status, requested a Form I-212, been refused one, and then been arrested, he might have an argument that enforcement of § 1326 in those circumstances was arbitrary. But that is not what Marte did. Instead, he attempted to get into the United States by presenting an expired green card and a customs declaration falsely claiming that he

9

was a United States resident living in Florida. The statute prohibits that conduct.

## C.

Marte next contends that another regulatory provision, 8 C.F.R. § 212.2(j), either authorized his conduct or is unconstitutionally vague when read in conjunction with § 1326. Section 212.2(j) provides that "[a]n alien whose departure will execute an order of deportation shall receive a conditional approval [to apply for reentry] depending upon his or her satisfactory departure." 8 C.F.R. § 212.2(j). Marte contends that the regulation applies to him because his "departure" in 1996 "execute[d] an order of deportation." See id. That would mean, he argues, that he already had approval to apply for reentry under this regulation and did not even need to file a Form I-212. We disagree.

The only reasonable interpretation of 8 C.F.R. § 212.2(j) limits its applicability to an alien who departed the United States on his own while an order of exclusion, deportation, or removal was pending. Under the regulations applicable to Marte's deportation proceedings, "once an order of deportation becomes final, an alien shall be taken into custody and the order shall be executed." 8 C.F.R. § 241.33(a). The INS takes the alien into custody on a warrant of deportation, see 8 C.F.R. § 241.32, or on a warrant of removal, see 8 C.F.R. § 241.2, and an INS agent executes the order of deportation by physically escorting the alien to a port of

10

departure. In other words, the Attorney General, through the INS, executes the order of deportation pursuant to a warrant. That is what happened to Marte.

An alien may be permitted to depart on his own, see 8 C.F.R. § 241.7, thus relieving the INS of the need to execute the order of deportation. Although the alien is still considered "deported," the alien's own departure executed the order. This distinction is recognized in § 1326, which applies to an alien who "has been . . . deported . . . or has departed the United States while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a)(1) (emphasis added). The regulation at issue here, § 212.2(j), applies only when the "departure . . . execute[d] an order of deportation," not when the INS executed the order of deportation, as it did with Marte. See 8 C.F.R. § 212.2(j).

A contrary reading of the regulation would grant any deported alien permission to present himself at a port of entry to apply for readmission to the United States. Such a reading would vitiate the statutory provision, which requires the Attorney General to have "expressly consented to such alien's reapplying for admission" prior to his reembarkation. 8 U.S.C. § 1326(2)(A). It would also render superfluous most of 8 C.F.R. § 212.2, which details how deported aliens may seek the Attorney General's consent. Construed in light of § 1326, § 212.2(j) does not grant an alien like Marte whose own "departure" did not execute the order of

11

deportation automatic approval to present himself at a port of entry to apply for readmission whenever he wishes.[3]

Because Marte was deported by INS agents pursuant to a warrant, the INS executed the 1996 order of deportation. Therefore, 8 C.F.R. § 212.2(j) is inapplicable.

**D.**

Alternatively, Marte contends that § 212.2(j) is impermissibly vague when interpreted in conjunction with § 1326. "[I]n the light of the facts of the case," see Fisher, 289 F.3d at 1333, we disagree. Marte had notice under the regulations and the clear language of § 1326 that, as an alien who had been deported, he was required to obtain permission before applying for reentry. Further, Marte received actual notice at the time of his 1996 deportation that he could not apply to reenter the United States without permission. Section 1326 set the legal boundaries for Marte's conduct, and § 212.2(j) does not blur those boundaries.

**E.**

In sum, no provision of 8 C.F.R. § 212.2 authorized Marte's conduct, nor is

---

[3] Marte's argument also ignores the fact that § 212.2(j) grants only "conditional approval" to reapply dependent upon "satisfactory departure." 8 C.F.R. § 212.2(j). Even an alien whose departure executed the order of deportation does not have automatic approval to reapply. Because this regulation does not apply to Marte in any event, we do not decide how it might apply in the case of an alien whose departure did execute the order of deportation.

the regulation unconstitutionally vague. Marte was convicted under § 1326, which clearly gave him notice that his conduct was prohibited, and the regulation did not change that. His conviction does not violate due process.

### III.

Marte's attack on the propriety of the district court's grant of the government's first motion in limine is dependent upon attempted illegal reentry being a specific intent crime. In United States v. Peralt-Reyes, 131 F.3d 956 (11th Cir. 1997), we held to the contrary that it is a general intent crime. Id. at 957. Of course, only the Supreme Court or this Court sitting en banc can judicially overrule a prior panel decision. See, e.g., Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997). Conceding that, Marte argues that our decision in Peralt-Reyes has been vitiated by the Supreme Court's later ruling in Carter v. United States, 530 U.S. 255, 120 S. Ct. 2159 (2000).

The Carter decision arose in a bank robbery case and had nothing to do with § 1326 in particular or with immigration laws in general. During the course of its opinion, the Supreme Court did note the longstanding canon of statutory construction about imputing the common-law meaning to statutory terms such as "attempt." Id. at 264, 120 S. Ct. at 2166. Marte would have this panel use that as an excuse to discard our decision in Peralt-Reyes. We cannot do so.

13

We are authorized to depart from a prior panel decision based upon an intervening Supreme Court decision only if that decision "actually overruled or conflicted with it." See In re Provenzano, 215 F.3d 1233, 1235 (11th Cir. 2000). Carter did neither. It neither announced a new canon of statutory construction nor altered any existing canon. Instead, Carter repeated and applied in the particular circumstances of that case a canon that was well-established long before this Court decided Peralt-Reyes. See Carter, 530 U.S. at 264, 120 S. Ct. at 2166. Our Peralt-Reyes remains binding, which means the district court properly followed circuit precedent when it granted the government's first motion in limine.

**IV.**

Marte also contends that even if § 1326 required the government to prove only general intent, the evidence was insufficient to do even that. He asserts that his conduct – coming to the airport, lining up, providing his identification, and answering the immigration inspectors' questions – did not demonstrate a substantial step toward illegally reentering the United States. His conduct was ambiguous, he says, because he could have been attempting only to obtain permission to reapply.

We review de novo the sufficiency of the evidence to support a conviction. See United States v. Miles, 290 F.3d 1341, 1355 (11th Cir.), cert. denied, 537 U.S. 1089, 123 S. Ct. 707 (2002). In doing so, we look at the record in the light most

14

favorable to the verdict and draw all reasonable inferences and resolve all questions of credibility in favor of the government. Id. The evidence is sufficient where a reasonable trier of fact could conclude that the evidence established guilt beyond a reasonable doubt. Id.

To convict Marte of attempted illegal reentry into the United States, the government had to prove that: (1) Marte was an alien at the time of the alleged offense; (2) he had previously been deported; (3) he had not received the express consent of the Attorney General to apply for re-admission to the United States since his previous deportation; and, (4) he attempted to enter the United States. See United States v. Cabral, 252 F.3d 520, 522-23 (1st Cir. 2001); see also United States v. Henry, 111 F.3d 111, 113 (11th Cir. 1997) (naming the elements of a completed illegal reentry). Marte contests the sufficiency of the evidence only with regard to the fourth element.

At trial, the government introduced evidence showing that Marte arrived in Miami on a one-way ticket from the Dominican Republic, presented the primary immigration inspector with an expired green card and a false customs declaration form (it claimed that he was a resident of the United States with an address in Florida), and failed to disclose that he had been deported in 1996. The evidence also showed that Marte never told the officials that he did not have permission to

15

apply for reentry, nor did he request a Form I-212 or ask about obtaining the Attorney General's permission. These last two points weigh against Marte's contention that he was only attempting to request permission to enter. A trier of fact reasonably could conclude beyond a reasonable doubt, as the district court did, that Marte attempted to enter the United States without requesting permission from the United States.

## V.

Finally, Marte contends that the district court should not have granted the government's second motion in limine to exclude Marte's intended defense that 8 C.F.R. § 212.2 either authorized his conduct or rendered his conduct "ambiguous" and not clearly illegal. When the district court grants a motion in limine based on a legal conclusion that a defense is not permissible, we review that determination de novo. United States v. Thompson, 25 F.3d 1558, 1563 (11th Cir. 1994).

This contention is essentially a repackaged version of Marte's argument that § 212.2 either authorized his conduct or was impermissibly vague. Because we have already concluded that § 212.2 did not authorize Marte's conduct and is not unconstitutionally vague when read in conjunction with § 1326 and in light of the facts of this case, there is no merit to Marte's contention that he should have been allowed to use this theory about § 212.2 as part of his defense. The district court

16

properly granted the government's second motion in limine.

AFFIRMED.