WILSON, Circuit Judge,
dissenting:
I strongly dissent from the majority’s decision to deny the request for an injunction pursuant to the All Writs Act and the request for a preliminary injunction. First, Plaintiffs have demonstrated their entitlement to a preliminary injunction. Second, the denial of Plaintiffs’ request for an injunction frustrates Congress’s intent, which is to maintain the status quo by keeping Theresa Schiavo alive until the federal courts have a new and adequate opportunity to consider the constitutional issues raised by Plaintiffs. The entire purpose for the statute was to give the federal courts an opportunity to consider the merits of Plaintiffs’ constitutional claims with a fresh set of eyes. Denial of Plaintiffs’ petition cuts sharply against that intent, which is evident to me from the language of the statute, as well as the swift and unprecedented manner of its enactment. Theresa Schiavo’s death, which is imminent, effectively ends the litigation without a fair opportunity to fully consider the merits of Plaintiffs’ constitutional claims.
We should, at minimum, grant Plaintiffs’ All Writs Petition for emergency injunc-tive relief. First, I note that there is no precedent that prohibits our granting of this petition. Second, mindful of equitable principles, the extraordinary circumstances presented by this appeal require that we grant the petition to preserve federal jurisdiction and permit the opportunity to give Plaintiffs’ claims the full and meaningful review they deserve.
In considering this extraordinary case, I am mindful that “[t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.” Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) (citations omitted). Keeping those principles firmly in mind, “mercy and practicality” compel us to grant the relief requested.

*1238
I. All Writs Act, 28 U.S.C. § 1651

The All Writs Act provides: “The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.” 28 U.S.C. § 1651. Federal courts have “both the inherent power and the constitutional obligation to protect their jurisdiction ... to carry out Article III functions.” Procup v. Strickland, 792 F.2d 1069, 1074 (11th Cir.1985) (en banc) (emphasis added). Toward that end, the All Writs Act permits federal courts to protect their jurisdiction with regards to “not only ongoing proceedings, but potential future proceedings.” Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1099 (11th Cir.2004) (internal citations omitted); ITT Comm. Devel. Corp. v. Barton, 569 F.2d 1351, 1359 n. 19 (5th Cir.1978)[1] (“When potential jurisdiction exists, a federal court may issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it.”). Although the Act does not create any substantive federal jurisdiction, it empowers federal courts “to issue writs in aid of jurisdiction previously acquired on some other independent ground,” see Brittingham v. Comm’r, 451 F.2d 315, 317 (5th Cir.1971), and codifies the “federal courts’ traditional, inherent power to protect the jurisdiction they already have.” Klay, 376 F.3d at 1099.
An injunction under the All Writs Act is an extraordinary remedy, one that “invests a court with a power that is essentially equitable, and as such, not generally available.” Clinton v. Goldsmith, 526 U.S. 529, 537, 119 S.Ct. 1538, 1543, 143 L.Ed.2d 720 (1999). A federal court’s power under the Act, while limited, is broad enough that “[a] court may grant a writ under this act whenever it is ‘calculated [in the court’s] sound judgment to achieve the ends of justice entrusted to it.” Klay, 376 F.3d at 1100 (citing Adams v. United States, 317 U.S. 269, 273, 63 S.Ct. 236, 239, 87 L.Ed. 268 (1942)).
I am careful to stress that equitable relief under the All Writs Act is not to be confused with a traditional injunction, which is “predicated upon some cause of action.” Klay, 376 F.3d at 1100. An injunction entered pursuant to the All Writs Act is not a substitute for traditional injunctive relief. The All Writs Act injunction is distinguished from a traditional injunction not by its effect, but by its purpose. To obtain relief under the All Writs Act, Plaintiffs need not satisfy the traditional four-part test associated with traditional injunctions “because a court’s traditional power to protect its jurisdiction, codified by the act, is grounded in entirely separate concerns.” Id. However, Plaintiffs must show that “some ongoing proceeding ... is being threatened by someone else’s action or behavior.” Id. Relief pursuant to the All Writs Act should only be granted in extraordinary circumstances where inaction would prevent a federal court from exercising its proper Article III jurisdiction.[2]
*1239 As an appellate court, we may grant All Writs Act relief to preserve our “potential jurisdiction ... where an appeal is not then pending but may be later perfected.” F.T.C. v. Dean Foods Co., 384 U.S. 597, 603, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802 (1966). In Dean Foods, the Supreme Court sustained the entry of a preliminary injunction that prevented the consummation of a merger of two corporations. The Supreme Court held that the use of an All Writs Act injunction was particularly appropriate in a situation where “an effective remedial order ... would otherwise be virtually impossible.” Id. at 605, 86 S.Ct. 1738. That is precisely the case here.
Plaintiffs have demonstrated that the issuance of an injunction is essential to preserve the federal courts’ ability to “bring the litigation to a natural conclusion.” Klay, 376 F.3d at 1102. By failing to issue an injunction requiring the reinsertion of Theresa Schiavo’s feeding tube, we virtually guarantee that the merits of Plaintiffs’ claims will never be litigated in federal court. That outcome would not only result in manifest injustice, but it would thwart Congress’s clearly expressed command that Plaintiffs’ claims be given de novo review by a federal court.
Given the extraordinary circumstances of this case, we are fully within our power to issue an injunction “in aid of [our] jurisdiction” pursuant to the All Writs Act. Under the Act, “[a] court may enjoin almost any conduct ‘which, left unchecked, would have ... the practical effect of diminishing the court’s power to bring the litigation to a natural conclusion.” Klay, 376 F.3d at 1102 (citing Barton, 569 F.2d at 1359). Federal courts may “compel acts necessary to promote the resolution of issues in a case properly before it” including “issuing] orders to aid in conducting fae-tual inquiries.” Id. (citations and internal quotation omitted).
The issuance of an All Writs Act injunction is, as mentioned earlier, an extraordinary remedy. However, this case is clearly extraordinary. Furthermore, entry of an All Writs Act injunction is necessary to preserve federal jurisdiction to hear Plaintiffs’ claims. My research has not revealed any precedent which clearly prohibits the entry of an All Writs Act injunction in a situation where a few days’ delay is “necessary or appropriate in aid of’ federal court jurisdiction. 28 U.S.C. § 1651. In contrast, refusing to grant the equitable relief would, through Theresa Schiavo’s death, moot the case and eliminate federal jurisdiction!
This deprivation would directly contravene Congress’s recent enactment granting jurisdiction in this case. An Act for the relief of the parents of Theresa Marie Schiavo, Pub. L. No. 109-3 § 2 (Mar. 21, 2005). The first step in statutory interpretation requires that courts apply the. plain meaning of the’ statutory language unless it is ambiguous. Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); United States v. Fisher, 289 F.3d 1329, 1337-38 (11th Cir.2002). Only when we find ambiguity in the statute’s text should we apply canons of statutory interpretation, such as the canon of constitutional avoidance. Dep’t of Hous. & Urban Dev. v. Rucker, 535 U.S. 125, 134, 122 S.Ct. 1230, 1235, 152 L.Ed.2d 258 (2002).
Because the language of the statute is clear, the majority’s reliance on legislative history is unwarranted and incorrect. As originally proposed, the Act mandated a stay of proceedings while the district court considered Plaintiffs’ claims. A later ver *1240 sion changed the language from “shall” (mandating a stay) to “may” (authorizing a stay). See 151 Cong. Rec. 3099, 3100 (daily ed. Mar. 20, 2005) (statement of Sen. Levin). Although the final version of the, Act did not contain any stay provision, we should not read this to mean that Congress intended to deny this Court the power to issue a stay. The reason that Congress deleted the stay provision is that “this bill does not change current law under which a stay is discretionary.” Id. (statement of Sen. Frist). In short, the legislation did not need an explicit stay provision because, given the already-existing discretionary power of federal courts to issue injunctions in aid of jurisdiction, it would have been redundant and unnecessary. Therefore, the majority’s assertion that the text of the statute limits or eliminates our power to enter an injunction is misplaced.
Here, we have Congress’s clear mandate requiring the federal courts to consider the actual merits of Plaintiffs’ claims. Congress intended for this case to be reviewed with a fresh set of eyes. We are not called upon to consider the wisdom of this legislation. In granting this injunction we would merely effectuate Congress’s intent.
If Congress had intended that federal review of the issues raised by Plaintiffs be given customary and ordinary treatment, that review would be confined to consideration of the denial of the motion for a writ of habeas corpus in Case No. 05-11517. There, consideration of Plaintiffs’ constitutional claims would be limited by the substantial deference that is afforded to previous state court determinations. Yet, Congress went to great lengths to remove many of those limitations. First, the legislation eliminates any “standing” barriers to the commencement of an action by Plaintiffs. Secondly, the legislation gives the Middle District of Florida entirely new consideration over any claim of a violation of Theresa Schiavo’s constitutional rights, without respect to “any prior state court determination and regardless of whether such a claim has previously been raised, considered, or decided in state court proceedings.” The legislation goes even further to eliminate any exhaustion requirements. Congress obviously intended that this case be considered by federal courts without the customary limitations. Today, we are not called upon to second-guess the wisdom of Congress, but to apply the law it has passed.

II. Preliminary Injunction

At first glance, Plaintiffs’ request for an injunction does not appear as strong as their claim pursuant to the All Writs Act. However, I believe that an injunction is appropriate and, at the very least, we should issue an injunction to permit the district court to review Plaintiffs’ claims on the merits.
To prevail on their request for injunctive relief, Plaintiffs must demonstrate the following: (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not issued; (3) threatened injury to the movant outweighs the potential damage that the proposed injunction may cause the defendants; and (4) the injunction will not be adverse to the public interest. See All Care Nursing Serv., Inc. v. Bethesda Mem’l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir.1989) (citation omitted). The issuance of an injunction is an extraordinary remedy, and the moving party “bears the burden to clearly establish the four prerequisites.” Cafe 207, Inc. v. St. Johns County, 989 F.2d 1136, 1137 (11th Cir.1993).
It is clear from our cases that proof of a substantial likelihood of success on the merits is an indispensable prerequisite to a preliminary injunction. All Care Nursing Serv., 887 F.2d at 1537. However, the *1241 movant must demonstrate a “substantial likelihood,” not a substantial certainty. To require more undermines the purpose of even considering the other three prerequisites. Thus, instead, “the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the [preliminary injunction].” Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir.1981) (per curiam); see Gonzalez v. Reno, No. 00-11424-D, 2000 WL 381901 at *1 (11th Cir. Apr. 19, 2000); United States v. Hamilton, 963 F.2d 322, 323 (11th Cir.1992); Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir.1986). The review “require[s] a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief.” Siegel v. LePore, 234 F.3d 1163, 1178 (11th Cir.2000) (en banc).
As we stated in Gonzalez, “where the balance of the equities weighs heavily in favor of granting the [injunction], the mov-ant need only show a substantial case on the merits.” Gonzalez, 2000 WL 381901 at *1 (internal citations omitted) (alteration in original). In this case, the balance of the equities weighs heavily in favor of granting the injunction. We determine the balance of the equities by examining the three final factors required to grant a preliminary injunction. Garcia-Mir, 781 F.2d at 1453.
“A showing of irreparable harm is the sine qua non of injunctive relief.” Northeastern Fla. Chapter of the Ass’n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir.1990) (citation and internal quotation omitted). Here, the immediate irreparable injury is not only possible, it is imminent. I am aware of no injury more irreparable than death. Clearly, the threatened injury of death outweighs any harm the proposed injunction may cause, i.e. reinserting the feeding tube. In fact, I fail to see any harm in reinstating the feeding tube. On the other hand, a denial of the request for injunction will result in the death of Theresa Schiavo. Finally, an injunction in this ease clearly would not be adverse to public interest, thus satisfying the fourth and final criteria necessary to grant a preliminary injunction. Upon reviewing these three factors, it is obvious that the equities weigh heavily in favor of granting the injunction. .
I now consider the first prong, whether Plaintiffs presented a substantial case on the merits. In the complaint, Plaintiffs claim that Theresa Schiavo’s Fourteenth Amendment due process rights were violated in that she was not provided a fair and impartial trial, she was not given adequate procedural due process, and she was not afforded equal protection of the laws. Further, Plaintiffs contend that Theresa Schiavo’s First Amendment freedom to exercise her religion has been burdened by the state court’s order to remove the feeding tube. Plaintiffs also allege a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a).
The establishment of a “substantial likelihood for success on the merits” is a heavy burden, but not an insurmountable one. A movant need not establish that he can hit a home run, only that he can get on base, with a possibility of scoring later. In fact, our circuit jurisprudence establishes that the movant need not establish a “probability” of success, taking all things into consideration. The merits of Plaintiffs’ substantial claims warrant a more complete review. I do not mean to suggest that Plaintiffs will definitely prevail on the merits, but merely that they have presented a sufficient case ón the merits. Plaintiffs raise legal issues necessitating *1242 the grant of the preliminary injunction and should be afforded an opportunity to defend the merits of their claims. Adjudication on the merits is impossible if we do not grant the injunction.
Finally, I note that awarding an injunction is an equitable decision. We have broad powers to fashion a remedy in equity. We are required to balance the equities, and when we do, we should find that the gravity of the irreparable injury Theresa Schiavo would suffer could not weigh more heavily in Plaintiffs’ favor. In contrast, there is little or no harm to be found in granting this motion for a temporary injunction and deciding the full merits of the dispute.
For the foregoing reasons, I respectfully dissent.

. In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

. The majority opinion holds that the All Writs Act is not appropriate in this case because "where the relief sought is in essence a preliminary injunction, the All Writs Act is not available because other, adequate remedies at law exist, namely Fed.R.Civ.P. 65, which provides for temporary restraining orders and preliminary injunctions” Maj. Opn. at 1228-29. I do not argue with that point. However, in this case, the relief Plaintiffs seek is not a preliminary injunction by another name. Rather, the purpose for which Plaintiffs ask that we reinsert Theresa Schiavo’s feeding tube is to permit a federal court to have time within which to exercise its jurisdiction and fully entertain Plaintiffs' claims. Thus, the purpose of entering an injunction in *1239 this case is limited to the narrow goal of aiding the exercise of federal jurisdiction. Plaintiffs’ claim is precisely the one and only type of situation in which an All Writs Act injunction is appropriate and for which there is no other adequate remedy at law.