United States Court of Appeals, Eleventh Circuit.

No. 94-8112.

UNITED STATES of America, Plaintiff-Appellee,

v.

Tommy Brown REID, aka, Tony Carr, John Richard Bullard, Lloyd Andre Miller, Defendants-Appellants.

Nov. 29, 1995.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:91-CR-457-6, 3 and 1), Richard C. Freeman, Judge.

Before EDMONDSON and COX, Circuit Judges, and FAY, Senior Circuit Judge.

FAY, Senior Circuit Judge:

In December of 1991, a federal grand jury in the Northern District of Georgia returned a four-count indictment charging Lloyd Andre Miller, Tommy Brown Reid, aka Tony Carr, John Richard Bullard, and five other men with conspiring to possess cocaine with the intent to distribute and other drug related charges.[1] In April of 1992, those same defendants were named in a superseding indictment charging them with conspiring to possess cocaine with the intent to distribute in Count One and the possession of cocaine with the intent to distribute on or about November 15, 1992 in Count Two. Miller was charged in Counts Three and Four with travelling in interstate commerce from Florida to Georgia with the intent to carry on the unlawful activity of the distribution of cocaine on or about November 2, 1990.

Before trial, defendants-appellants moved to suppress evidence

[1]The judgement of conviction and sentence imposed by the district court as to John Richard Bullard was affirmed on May 25, 1995, by a separate panel of the Eleventh Circuit.

found in the residence during the securing process, alleging that the warrantless entry into the residence violated their Fourth Amendment rights.  This motion was referred by the district court to a United States magistrate judge who held an evidentiary hearing on the matter.  In his report and recommendation the magistrate recommended denial of the motion, rejecting defendants-appellants argument that the warrantless entry was without exigent circumstances to justify the intrusion.  District Court Judge Richard C. Freeman accepted and adopted the report and recommendation of the magistrate judge.  A three week jury trial resulted in the conviction of all defendants on all charges. Miller was sentenced to a term of life in prison, and Reid was sentenced to a term of 292 months in prison followed by five years of supervised release.  On appeal, both defendants challenge the district court's denial of their motion to suppress.  Defendant Reid challenges the district court's ruling on the admissability of certain evidence and the calculation of his sentence.  For reasons explained below, we affirm the defendants' convictions and sentences.

I. *The Motion to Suppress*

A. *The Evidence Offered at the Suppression Hearing*

On November 7, 1991, Jethro Pitts became a confidential informant ("CI") when he was arrested and charged with possession of cocaine.  He agreed to cooperate with law enforcement officers and told them that he could buy fifteen kilograms of cocaine for them.

Pitts contacted Lloyd Andre Miller, whom Pitts knew as

"Chief", and informed him that he knew of someone who wanted to make a buy.  On November 14, 1991, the CI and an undercover agent posing as a cocaine purchaser met Miller at the Atlanta Airport to negotiate a purchase of approximately fifteen kilograms of cocaine. Pitts and Miller drove to an apartment in Cobb County where they met with T.Y. Grant and J.R. Bullard.  During the ride from the airport a conversation was recorded in which Miller talked about receiving large quantities of cocaine into the Atlanta area from California, Miami, and New York.  Miller made arrangements for Grant to meet Pitts and the undercover agent the next day at a shopping center in Fayette county to deliver the cocaine.

Grant arrived at the shopping center at approximately 9:00 a.m. on November 15, 1991, but indicated that he did not want to conduct the deal there and started to leave.  At that time Grant was arrested by surveilling special agents.  A search of his automobile revealed secret compartments, indicative of the transporting of illegal drugs, but no drugs were found.

The CI contacted Miller and told him that Grant had failed to show up for the deal.  Soon thereafter, Miller arrived at the shopping center.  Miller and Pitts left in Pitts' automobile and were gone for approximately three hours.  On their return to the shopping center, Pitts used a cellular phone to alert agent McCain that they had the drugs with them.  When they arrived, Miller was arrested and fifteen kilograms of cocaine were found in a secret compartment in Pitt's automobile.  Miller's arrest occurred at approximately 1:28 p.m.

The CI then advised law enforcement officers that he knew the

stash house where more drugs were located and that people were at that time making pick-ups for delivery. He also advised Agents Hogan and Stevens of the Fayette County Sherriff's department that they needed to get to the house as soon as possible because deliveries of the cocaine were being made out of the house. Agent Noe of the Clayton County Narcotics Unit and Agent Hogan drove with the CI to the "stash" house location at 113 Honeycreek road in Henry County. Pitts pointed that house out as the drug house when a white pick-up truck was spotted in the driveway. Pitts told Noe that when they were at the house earlier, Miller was directing the delivery of cocaine out of the house.

Agent Noe contacted Agent Roger Stubbs of the Henry County Police Department who in turn contacted an assistant district attorney from Henry County. Stubbs was to meet Noe near the Honeycreek location to see about a search warrant. Noe also assigned agents to watch the house and directed them to stop any vehicles that left the house. Stubbs arrived and met with Noe at approximately 2:00-2:30 p.m. Noe informed Stubbs of the events which led up to their presence at the Honeycreek location. At approximately 3:00-3:30, Noe met with some of the agents and officers at the scene to inform them of the circumstances involved, as well as to instruct them as to their duties. At around 4:00 p.m., Noe and Stubbs drove by the house so that Stubbs could get a physical description of the residence for a search warrant application. Stubbs was to be the affiant on the search warrant.

Before the search warrant was obtained, certain events transpired which caused the police to enter and secure the

Honeycreek residence.  Upon their departure from the residence area, Noe and Stubbs were informed of a blue and silver pickup truck leaving the residence.  Noe and Stubbs, along with other agents, stopped the truck.  The truck was driven by Daniel Robert Kaeslin who was using the alias of John Francis Baker.  Agents searched the truck for money, drugs or secret compartments but none could be found at that time.  The agents released Kaeslin at approximately 4:35 p.m., fearing they had been holding him too long without probable cause to arrest him.  Although Kaeslin was released, his truck was retained for further inspection.

Agent Stubbs left the scene where the truck had been pulled over in order to meet with Henry County Assistant District Attorney McBerry who had arrived at the location at approximately 4:00 p.m. During this meeting Stubbs informed him of the sequence of events which led up to their presence at the Honeycreek location.  Stubbs and McBerry also met with the CI in order to ensure they had all of the facts and information necessary to secure a search warrant. The CI informed McBerry of the events that had transpired earlier and what he had observed at the "stash" house.

Meanwhile, during Stubbs' meeting with McBerry and the CI, a black Cutlass pulled into the driveway of the residence and then backed up and left.  Upon its departure from the residence the car was stopped and a search revealed hidden compartments along with some fabric softener towels, which are often used to mask the scent of drugs from drug detection dogs.  No drugs were found in the compartments.  Three individuals in the Cutlass were arrested, Stephen Shaw, David Hill and J.R. Bullard.  Hill had a small

quantity of cocaine on his person.

At about 5:15-5:30 p.m. a van pulled into the Honeycreek house driveway and the garage door opened. The van entered the garage and the garage door closed. It was at this time that Agent Noe believed it was imperative that they secure the house. Noe discussed the decision with Agent Stubbs and Mr. McBerry before acting.

Agent Noe testified that his decision to secure the residence was based on his primary concern that evidence would be lost. Noe further stated that he was concerned that someone might flee on foot or in a vehicle and put the public or officers in danger, and that if someone had fled through the small subdivision, there was a chance they could get away with the evidence.

The entry into the residence was conducted by Fayette, Henry, and Clayton County agents. The house was secured and appellant Reid was found inside, along with Franklyn Williams. In the process of securing the house, agents discovered approximately 200 kilograms of cocaine and about $1,164,000.00. The officers were repeatedly told not to search the house until the execution of the search warrant.

Affiant Stubbs and assistant district attorney McBerry left the house for purposes of obtaining a search warrant approximately ten to fifteen minutes after the house was secured. Affiant Stubbs presented a Henry county superior court judge with written and oral information concerning the circumstances which transpired earlier in the day but not the details learned during the securing of the house. The warrant was signed at 7:15 p.m. and affiant Stubbs

returned to the Honeycreek residence between 8:00 and 8:15 p.m. to execute the warrant. The house was searched along with the blue and silver truck and the Plymouth Voyager van. During the search the agents seized cocaine, guns, money, miscellaneous documents and other items.

### B. *The Standard of Review*

Rulings on motions to suppress evidence involve mixed questions of law and fact. We therefore review the district court's factual findings for clear error and its application of the law to those facts *de novo.* *United States v. Ramos,* 12 F.3d 1019, 1022 (11th Cir.1994); *United States v. Diaz-Lizaraza,* 981 F.2d 1216, 1220 (11th Cir.1993). Similarly, we will not overturn a district court's decision that omissions or misrepresentations in a warrant affidavit were not reckless or intentional unless clearly erroneous. *United States v. Cancela,* 812 F.2d 1340, 1343 (11th Cir.1987). When considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the prevailing party below. *United States v. Behety,* 32 F.3d 503, 510 (11th Cir.1994); *United States v. Magluta,* 44 F.3d 1530, 1536 (11th Cir.1995).

### C. *The Issues on Appeal*

Miller and Reid present three arguments in support of their contention that the district court erred in denying the motion to suppress the items seized at the Honeycreek residence. We find it necessary only to address two of these arguments. First, defendants contend that their due process rights were violated when contraband seized in violation of their Fourth Amendment

constitutional protections was introduced at trial. Specifically, they argue: "Law enforcement officers conducted a warrantless entry into 113 Honeycreek Road without exigent circumstances to justify the intrusion."[2] We disagree with this contention.

"It is a "basic principle of Fourth Amendment Law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). "A warrantless search is allowed, however, where both probable cause and exigent circumstances exist." *United States v. Tobin,* 923 F.2d 1506, 1510 (11th Cir.1991) (en banc), *cert. denied,* 502 U.S. 907, 112 S.Ct. 299, 116 L.Ed.2d 243 (1991). With respect to this contention, it is not disputed that the agents had probable cause to search the Honeycreek residence. The issue that remains is whether exigent circumstances existed to justify the warrantless intrusion.

The test for whether or not exigent circumstances exist is whether the facts would lead a reasonable, experienced agent to believe that evidence might be destroyed or removed before a warrant could be secured. *United States v. Rodgers,* 924 F.2d 219, 222 (11th Cir.1991). Recognized situations in which exigent circumstances exist include: "danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and hot pursuit of a fleeing suspect." *United States v. Blasco,* 702 F.2d 1315, 1325 (11th Cir.1983). This court has held that the need to invoke the exigent circumstances exception to the warrant requirement is

---

[2]Appellants brief at 12 and 20.

"particularly compelling in narcotics cases" because narcotics can be so easily and quickly destroyed. *United States v. Young,* 909 F.2d 442, 446 (11th Cir.1990), *cert. denied,* 502 U.S. 825, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991).

The magistrate, and by adoption of his findings the district court, made several factual findings in support of the warrantless, exigent circumstances entry of the Honeycreek house. The agents had probable cause to believe, based on what they perceived to be reliable information, that the house contained large quantities of cocaine. Agents also had reason to believe that deliveries of cocaine were being directed out of the Honeycreek residence. Based on the foregoing information, as well as additional information obtained from the CI regarding the "stash" house and its contents, recorded conversations between Miller and the CI, the search results of two vehicles leaving the house, and the arrival of the van at the house, the agents had an objectively reasonable basis to believe that there was an imminent risk of losing the evidence, risk of someone fleeing with the evidence, and danger of harm to the public or officers.

More specifically, Agent Noe, who was directing the investigation, testified that he remembered a recorded conversation which revealed that Miller had purchased a van with secret compartments. Secret compartments such as these are indicative of the transporting of illegal drugs. Thus, Noe believed that the arrival of the van indicated that the cocaine would be loaded for purposes of delivery to another location. In addition, Noe believed that because it was time for nearby residents to be

getting home from work, and because the roads in that particular subdivision were especially narrow, a suspect could flee with the contraband, and while alluding arrest endanger both the public and the officers involved. These facts were sufficient to justify a warrantless intrusion into the residence while a search warrant was being sought. Our review of the record convinces us that the agents were objectively reasonable when they believed that they were confronted with an exigency in which the delay necessary to obtain a warrant under the circumstances threatened the removal of evidence. We find no error in the district court's application of the law to the facts.[3]

Second, defendants argue that the evidence seized pursuant to the search should have been suppressed because the affidavit to support the search warrant contained misrepresentations which were purposeful and intentional or made in reckless disregard for the truth. Further, they contend that when these misrepresentations are set to one side, the remaining content is insufficient to establish probable cause. In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court considered the issue of whether "a defendant in a criminal proceeding ever [has] the right, under the Fourth and Fourteenth Amendments ... to challenge the truthfulness of factual statements made in an affidavit supporting [a] warrant." *Franks,* 438 U.S. at 155, 98 S.Ct. at 2676. The Supreme Court held that where the defendant makes a substantial preliminary showing that an affiant knowingly

_____

[3]Because we find exigent circumstances existed to justify the warrantless intrusion, we need not address the independent source doctrine.

and intentionally included a false statement in an affidavit, or made the false statement with reckless disregard for its truth, and the false statement was necessary to the finding of probable cause, then constitutional mandate requires that a hearing be held at the defendant's request. *Franks,* 438 U.S. at 155-156, 98 S.Ct. at 2576. However, "[i]nsignificant and immaterial misrepresentations or omissions will not invalidate a warrant." *United States v. Sims,* 845 F.2d 1564, 1571 (11th Cir.), *cert. denied,* 488 U.S. 957, 106 S.Ct. 395, 102 L.Ed.2d 384 (1988) (quoting *United States v. Ofshe,* 817 F.2d 1508, 1513 (11th Cir.), *cert. denied,* 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987)). The magistrate who heard the motion to suppress found that the alleged misrepresentations did not represent material misrepresentations and were not knowingly or intentionally made. The district court agreed with the magistrate. Our review of the record leads us to conclude that this judgment was not clearly erroneous.

## II. *The Plea Colloquy*

Reid contends that the district court erroneously excluded co-defendant Shaw's plea colloquy as evidence of impeachment, an admission of party opponent and a statement against interest. We disagree. The standard of review to determine whether or not evidence is properly admitted is to determine whether or not the trial court abused its discretion. *United States v. Orr,* 825 F.2d 1537, 1543 (11th Cir.1987).

At trial, Reid sought to introduce evidence of co-defendant Shaw's affirmation of the governments's statement regarding Shaw's involvement in the instant offense which was made during the taking

of Shaw's guilty plea. Reid contended that this colloquy would contradict testimony given by co-defendant Kaeslin that appellant Reid was one of the men involved in unloading cocaine from a truck in the garage, and therefore, would give the jury the basis on which they could reject the rest of Kaeslin's testimony. It appears the district court excluded the plea colloquy because it did not necessarily contradict Kaeslin's testimony, and therefore, any probative value was outweighed by other considerations under Federal Rule of Evidence 403. We find the district court did not abuse its discretion in this matter.

### III. *The Sentencing*

Reid raises two arguments regarding his sentencing. First, he contends that the district court erred in increasing his offense level based on his possession of a firearm. The officers found three weapons in the residence, two in a room that was deadbolt locked, the other in a bedroom that contained some of Reid's clothing and personal belongings. Relying on the presence of the firearms in the residence, the district court increased Reid's offense level by two pursuant to U.S.S.G. § 2D1.1(b)(1).[4] Reid argues that he had neither actual or constructive possession of the guns seized, and in the alternative, argues that the three-prong test set out in *United States v. Otero,* 890 F.2d 366, (11th Cir.1989), was not met. We find no error in the sentencing court's firearms enhancement against Reid. Because the grounds for possession under *Otero* are entirely sufficient, we need not address

---

[4]U.S.S.G. § 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase [the base offense level] by 2 levels."

the evidence of direct possession.

Under *Otero,* a co-conspirator's possession of a firearm will support enhancement of another co-conspirator's offense level if three requirements are met: (1) the possessor must be charged as a co-conspirator; (2) the co-conspirator must be found to have possessed the firearm in furtherance of the conspiracy; and (3) the defendant who is to receive the enhanced sentence must have been a member of the conspiracy at the time of the firearm possession. *Id.* at 367; *see also United States v. Nino,* 967 F.2d 1508, 1514 (11th Cir.1992) (noting that "nowhere in the *Otero* opinion is it said that enhancement is allowable only if the three conditions set out in the opinion are met."), *cert. denied,* --- U.S. ----, 113 S.Ct. 1432, 122 L.Ed.2d 799 (1993).

In the instant case, Miller was charged as a conspirator. Evidence at trial established that Miller purchased the firearms that were discovered in the Honeycreek residence. These guns were found in a "stash" house which contained approximately 200 kilograms of cocaine and $1.6 million dollars, thus substantiating the fact that the firearm was possessed in furtherance of the conspiracy. Reid was a member of the conspiracy during the time of the firearms possession. Therefore, Reid's argument is without merit. We find the firearms enhancement satisfies the conditions set out in *Otero.*

Furthermore, Reid contends that the second prong in *Otero* is not met because none of the conspiracy members either plead guilty or were convicted of possession of a firearm. "As *Nino* makes clear, a coconspirator need not be found guilty of a firearms

charge; rather, a sentencing court need only make a factual finding for sentencing purposes that a coconspirator possessed a firearm in furtherance of the conspiracy while the defendant was a member of that conspiracy." *United States v. Delgado,* 56 F.3d 1357, 1372 (11th Cir.1995). Thus, this contention is also without merit. Accordingly, the district court did not err in enhancing Reid's sentence under U.S.S.G. § 2D1.1(b)(1) based on his possession of a firearm.[5]

Second, Reid challenges as error the district court's denial of his claim for a reduction in his offense level based on his mitigating role in the offense pursuant to U.S.S.G. § 3B1.2.[6] Specifically he argues that "[he] is entitled to at least a two level decrease for [a] minor role."[7] We disagree.

A sentencing court's determination under the Federal Sentencing Guidelines of a defendant's role in the offense is a factual finding. *United States v. Castillo-Valencia,* 917 F.2d 494, 501 (11th Cir.1990), *cert. denied,* 499 U.S. 925, 111 S.Ct. 1321, 113 L.Ed.2d 253 (1991). We do not disturb the sentencing court's findings of fact absent clear error. *United States v. Davis,* 902

---

[5]"As with all factual findings under the guidelines, this determination is entitled to deference and can be reversed only if it is clearly erroneous." *United States v. Smith,* 918 F.2d. 1501, 1514 (11th Cir.1990) (*quoting United States v. Rowland,* 906 F.2d 621, 623 (11th Cir.1990)).

[6]U.S.S.G. § 3B1.2 provides: "Based on the defendant's role in the offense, decrease the offense level as follows: (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels[;] (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling in between (a) and (b), decrease by 3 levels."

[7]Appellants brief at 45.

F.2d 860, 861 (11th Cir.1990). Nevertheless, we review *de novo* the sentencing court's Federal Sentencing Guidelines application to those facts. *United States v. Rodriguez,* 959 F.2d 193, 195 (11th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 649, 121 L.Ed.2d 563 (1992).

Based on the evidence adduced at trial and the pre-sentencing hearing, the district court ruled that the defendant was not a minimal or minor participant in the offense and was therefore, not entitled to a reduction in his offense level. Specifically, the district court found that although Reid did not fill a leadership role in the conspiracy, he and the other co-conspirators were no less culpable than the leader. We agree with these findings. Accordingly, we find no clear error in the denial of Reid's claim for a reduction in his sentence.

## IV. *Conclusion*

After a careful review of the record and the arguments presented, we find no basis on which to suppress the evidence, disturb the district courts's ruling regarding the admissability of evidence, nor disturb the sentence imposed. Therefore, the judgement below is AFFIRMED.