[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 30, 2010
JOHN LEY
CLERK

No. 09-13228
Non-Argument Calendar

_____

D. C. Docket No. 08-00087-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANTE JAMON WALKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 30, 2010)

Before BARKETT, HULL and MARTIN, Circuit Judges.

PER CURIAM:

Dante Jamon Walker appeals his conviction for conspiracy to distribute and

possess with intent to distribute 50 or more grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), 846, and possession with intent to distribute 5 or more grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii). Walker appeals the district court's denial of his motion to suppress evidence seized after police officers entered his house without a warrant. He argues that the government failed to present enough evidence to support the finding that exigent circumstances justified the warrantless entry made for the stated reason that evidence was in danger of being destroyed or removed before a warrant could be obtained. We conclude that there were exigent circumstances, and AFFIRM Walker's conviction.

I.

On April 4, 2008, Detective Martez Lawrence with the Pensacola Police Department was working undercover with a confidential informant ("CI") to make a controlled purchase of crack cocaine from Charlie Searight. Detective Lawrence had bought drugs from Searight before, and had been told by the CI that Walker was a source of the crack cocaine sold in the area. Detective Lawrence and the CI ran into Searight that evening, and Searight directed them to Walker's house so he could get the crack cocaine for the sale. Detective Lawrence knew who Walker was and that he lived in that house.

When Detective Lawrence, the CI, and Searight arrived at Walker's house, Searight went inside to get the crack cocaine. While Searight was inside, Detective Lawrence observed three different people come and go from the home. Based on his experience and training, Detective Lawrence believed this was consistent with drugs being sold from the house. Searight returned with $20 worth of crack, which he gave to Detective Lawrence. Searight then asked Detective Lawrence and the CI to wait while more drugs were being made ready, and went back inside the house. He came outside again and said that the crack was still not ready, but if they came back later he would sell them more. Detective Lawrence concluded that crack cocaine was being prepared inside Walker's house.

Meanwhile, two detectives were nearby conducting surveillance and cover for Detective Lawrence. Detective Eric Hubley witnessed all of the events, and also concluded that narcotics were being sold out of Walker's house. Detective Marvin Miller was monitoring the microphone attached to Detective Lawrence. After Detective Lawrence left Walker's house, the three detectives went to the police station where they intended to get a search warrant. Detective Lawrence felt he needed to go back to get more physical details of the home for the warrant, so he and Detective Hubley returned to Walker's house and parked down the street.

Upon returning to the house, the detectives noticed a significant increase in

3

people going in and out of the house since they left 15 minutes earlier. They concluded that the crack cocaine had been cooked and was being sold. They decided to secure the residence because they were "watching [the] evidence walk out of the door." After backup arrived, law enforcement knocked and announced their presence, then secured the house with a protective sweep. Detective Miller found a plastic baggie in a toilet that appeared to contain crack cocaine. He called in Detective Hubley, who removed the baggie and laid it beside the toilet because he was afraid it would disintegrate in the water or might otherwise be flushed. Also in plain view, officers found a bottle of liquid codeine, marijuana, powder cocaine, and a blue cup commonly used to convert powder into crack cocaine.

Detectives Hubley and Lawrence left the house to get a search warrant. According to Detective Hubley, no more than an hour and a half lapsed from the time they left until the time they returned with the search warrant, which was executed. In the search of the home that followed, officers then found a half kilo of powder cocaine, six to eight bottles of liquid codeine, a bag of marijuana, one gram of powder cocaine on the floor, plastic bags and baggies, baking soda,[1] at least four digital scales, approximately $4000 in Walker's wallet (stashed under a mattress), and several other items consistent with crack cocaine production. Some

---

[1]Baking soda is commonly used as a bonding agent in making crack cocaine.

of the money in Walker's wallet was used in the detectives' earlier controlled buys. No weapons or firearms were found.

After the suppression hearing, the district court ordered supplemental briefing on the issue of exigency. Although the court had no difficulty finding that the officers had probable cause to undertake a search, it could not find a similar case in which a warrantless entry into a home was justified where there was no evidence that the occupants were armed, posed a danger to police or the public, or had any indication that they were under police surveillance. The only facts the court saw as supporting a finding of exigent circumstances were the detectives' firsthand knowledge that drug sales were occurring out of the Walker home and their reasonable belief that more drug sales would occur. After briefing, the court concluded that there were exigent circumstances, because the officers believed that the crack cocaine was being quickly removed from the home. The court considered the detectives' training and experience as well as their personal experience of buying from inside Walker's home, and denied the motion to suppress.

## II.

"Rulings on motions to suppress evidence involve mixed questions of law and fact. We therefore review the district court's factual findings for clear error

5

and its application of the law to those facts de novo." United States v. Reid, 69 F.3d 1109, 1113 (11th Cir. 1995). "When considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the prevailing party below." Id. Because Walker does not challenge the district court's factual findings, we need only discuss whether those facts support the legal conclusion that there were exigent circumstances.

The Fourth Amendment protects the right of persons to be free from unreasonable searches and seizures. U.S. Const. Amend. IV. "In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home . . . ." Payton v. New York, 445 U.S. 573, 589, 100 S. Ct. 1371, 1381–82 (1980). A warrantless search of a person's home is presumptively unreasonable. United States v. Ramirez-Chilel, 289 F.3d 744, 751 (11th Cir. 2002). However, where law enforcement officers have probable cause to search, exigent circumstances may justify a warrantless intrusion into a home. United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc). The government bears the burden of proving that the officers had both probable cause and that there was exigency. United States v. Holloway, 290 F.3d 1331, 1337 (11th Cir. 2002).

Law enforcement officers have probable cause if, "under 'the totality-of-the-

circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Tobin, 923 F.2d at 1510 (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)) (alteration in original). Walker does not dispute that the officers had probable cause to believe that his home contained evidence of a crime. He does dispute whether the circumstances were sufficiently exigent to justify entering his home without a warrant.

The mere presence of drugs in the home does not give rise to exigent circumstances. Tobin, 923 F.2d at 1510. Exigent circumstances only exist when the delay incident to obtaining a warrant must yield to the urgent need for immediate action. United States v. Burgos, 720 F.2d 1520, 1526 (11th Cir. 1983). Narcotics investigations, for example, frequently involve exigent circumstances "because narcotics can be so easily and quickly destroyed." Reid, 69 F.3d at 1113; see also Tobin, 923 F.2d at 1510. If the exigency is, as here, based on the officers' fear that narcotics will be destroyed or removed, we ask "whether the facts would lead a reasonable, experienced agent to believe that evidence might be destroyed or removed before a warrant could be secured." Reid, 69 F.3d at 1113. An exigency only excuses a "limited" intrusion, and once inside the residence, the officers may only seize evidence "found within plain view." Holloway, 290 F.3d at 1334.

In finding exigent circumstances, the district court looked to our decision in

Reid.  In Reid, as here, undercover detectives were working with a CI to make controlled purchases of narcotics.  Reid, 69 F.3d at 1111.  The Reid buy was set to occur at a shopping center, but plans changed and the CI went with the dealer (unaccompanied by the undercover agent) to a "stash house" where large amounts of cocaine had recently been delivered.  Id.  After the CI received the cocaine, he alerted law enforcement agents that he knew where the stash house was and that they needed to get to the house quickly, as the cocaine was then being distributed.  Id.  The officers drove with the CI to the home, then the agents called the prosecuting attorney and made plans to get a search warrant.  Id.  at 1111–12.  Other officers were put on surveillance, and were told to stop any vehicles leaving the house.  Id. at 1112.  Approximately two and a half hours after they learned about the stash house, officers drove past the house to get a physical description for the search warrant.  Id.  However, before they obtained the search warrant, a van pulled into the driveway, entered the garage, and the garage was closed.  Id.  Earlier, one of the officers had overheard a recorded conversation indicating that a van had been purchased "with secret compartments . . . indicative of the transporting of illegal drugs."  Id. at 1114.  We held that the officers had an objectively reasonable basis to believe that the evidence would soon be gone, and a warrantless intrusion was justified to secure the home while the search warrant was

8

being obtained.  Id. at 1114.

There are similarities between this case and Reid, but there are also notable differences.  While the detectives may have reasonably believed that the crack cocaine produced in the Walker house on April 4, 2008 would quickly disappear, they also had reason to suspect—based on the CI's tip—that the house was frequently used to cook crack cocaine.  In Reid, the concern was that the evidence would be completely gone, as the officers did not know whether the drug shipment was a one-time event or was ongoing.  In contrast, the detectives here knew that, even if this batch would sell soon, another batch would likely follow.  Also, Searight affirmatively told Detective Lawrence and the CI that if they came back later, they could buy more crack cocaine.  Nevertheless, each of these cases is decided on its individual facts, and we cannot say that the district court clearly erred in making the credibility determinations it did.

Walker argues that the government failed to establish an objective basis supporting the detectives' fear that the evidence would quickly be sold.  However, the district court credited the detectives' combined training and experience, together with their personal experience buying crack from Walker's home, and found that the detectives had a sufficient, objective basis for believing that the drugs would likely be removed from the home before they could obtain a search

9

warrant. This finding was not clearly erroneous. Reid requires nothing more, since "[t]he test for whether or not exigent circumstances exist is whether the facts would lead a reasonable, experienced agent to believe that evidence might be destroyed or removed before a warrant could be secured." Reid, 69 F.3d at 1113.

Even if we found that the district court erred in failing to suppress the "plain view" evidence seen by the officers upon their warrantless entry, this error would likely have been harmless. See United States v. Villabona-Garnica, 63 F.3d 1051, 1057 n.5 (11th Cir. 1995) ("[I]n light of the overwhelming evidence against appellants even if the district court had erred in finding exigent circumstances, failure to suppress the evidence would . . . likely be harmless beyond a reasonable doubt."). Even without the plain view evidence, the jury still would have been presented with the evidence seized after the warrant arrived. This evidence included a half kilo of powder cocaine, six to eight bottles of liquid codeine, a bag of marijuana, one gram of powder cocaine on the floor, digital scales, almost $4000 in Walker's wallet, and other items consistent with crack cocaine production. Because some of the money in Walker's wallet was "controlled buy money" used by the detectives in their earlier buys, the money directly linked Walker with the routine and tangible sales that occurred in the neighborhood at other locations. Crack cocaine was also discovered on at least one person at the

residence. Excluding the crack cocaine found in the toilet, there was post-warrant evidence sufficient to hold Walker responsible for the threshold sums of crack cocaine stated in the indictment (50 grams for the conspiracy count and 5 grams for the possession with intent to distribute count). A U.S. Drug Enforcement Agency testified at trial that the amount of cocaine powder and baking soda found in the home would have yielded 113.4 grams of crack cocaine, well in excess of the amount alleged in the indictment. Thus the plain view evidence was "solely corroborative of other evidence that overwhelmingly indicates guilt." United States v. Khoury, 901 F.2d 948, 960 n.8 (11th Cir. 1990).

After review of the entire record, we conclude that law enforcement had an objective, reasonable basis for believing that crack cocaine was being cooked at Walker's house and that the drugs would be gone before they could obtain and execute a search warrant. Because of these exigent circumstances, the warrantless entry into Walker's home did not violate his Fourth Amendment rights. We therefore AFFIRM Walker's conviction.