[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12335
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 16, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:09-cr-00530-RAL-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE GARCIA GUTIERREZ,
a.k.a. Jose Luis Garcia Guitierrez,
a.k.a. Caferino Lopez-Ocegueda,
a.k.a. Jose L. Garcia,
a.k.a. Roberto Martinez,
a.k.a. Roberto Martinez-Osegueraga-Nunez,
a.k.a. Gabriel Castillo-Perez,
a.k.a. Roberto Osegueya Martinez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 16, 2011)

Before CARNES, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Jose Garcia Gutierrez appeals his convictions following a jury trial for conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; and possession with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). He contends the district court erred by denying his motion to suppress, by denying his motion for judgment of acquittal based on insufficient evidence, and by admitting evidence of his prior crimes. He also argues that his defense counsel provided ineffective assistance of counsel.

I.

A.

Garcia Gutierrez contends that evidence obtained during a warrantless search of his house should have been suppressed because the law enforcement agents did not act under exigent circumstances when entering the house. That evidence included both physical evidence obtained from the house as well as statements that Garcia Gutierrez made to law enforcement agents following his arrest. Before trial he filed a motion to suppress, and the district court held a

2

hearing on the motion. A special agent with the Drug Enforcement Administration testified to the following facts at the hearing.

On January 21, 2006, agents at a checkpoint in Sarita, Texas, seized approximately 23 kilograms of cocaine from a hidden compartment in a pickup truck. A cooperator then agreed to make a "controlled delivery" in Bradenton, Florida, and agents placed 5 kilograms of cocaine back into the hidden compartment of the truck. The cooperator was directed by his co-conspirators to deliver the truck to a Wal-Mart parking lot in Bradenton, leave the keys on the floorboard, and wait inside the Wal-Mart. DEA agents were deployed to conduct surveillance of the lot.

On the evening of January 22, 2006, the cooperator delivered the truck to the Wal-Mart, and around 9:05 PM Garcia Gutierrez picked up the truck. At the time of the delivery and pick-up, the agents conducting surveillance were concerned that other co-conspirators were conducting counter-surveillance. The agents followed Garcia Gutierrez to a house located at the far end of a dead-end street, approximately ten minutes from the Wal-Mart. The location of the house made covert surveillance extremely difficult, but the agents were able to see Garcia Gutierrez drive the truck into a garage and close the garage door. Once the door was closed, the agents could see the front of the residence but not the truck.

The agents knew nothing about the house or its owners; they did not know whether people in addition to Garcia Gutierrez were inside the house or whether those people were armed.

After waiting between 5 and 10 minutes, the agents decided to enter the house. The agent who testified at the suppression hearing explained that he and his fellow DEA agents feared that the occupants of the house might be destroying the remaining cocaine. The agents also feared they would be discovered, which would in turn have endangered the safety of the cooperator who had delivered the truck and was now waiting inside the Wal-Mart. The fact that all but 5 kilograms of cocaine had been removed from the truck increased the likelihood that Garcia Gutierrez and his co-conspirators would figure out that law enforcement was involved.

The agents first attempted to breach the front door but were unable to do so and resorted to knocking. Garcia Gutierrez then came to the door and opened it. He was placed on the floor, handcuffed, and read his <u>Miranda</u> rights as other agents conducted a protective sweep. After acknowledging that he had been living at the house for a short time, Garcia Gutierrez gave his consent to a search of the house. At the time he gave consent, the agents' weapons were holstered. The search of the house, however, did not occur immediately. Garcia Gutierrez

4

received a phone call on his cell phone, and the agents allowed him to answer it because he had been cooperating fully. Two other suspects soon arrived on the scene, and they were arrested in the driveway of the house. One of those suspects, Medina Gutierrez, acknowledged living at the house and also gave his consent to a search.

At the conclusion of the suppression hearing, the district court denied Garcia Gutierrez's motion to suppress. The court credited the DEA agent's testimony but made no finding as to the legality of the agents' warrantless entry of the house. Instead, the court found that Garcia Gutierrez's Miranda waiver had been valid and his statements should not be suppressed. With respect to the physical evidence found in the search, the court reasoned that even if it were to conclude that the agents' entry of the house and seizure of Garcia Gutierrez had been illegal, Medina Gutierrez had also consented to the search while Garcia Guitierrez was already under arrest, and Medina's Guiterrez's arrest outside the house was "a completely separate incident" not tainted by anything that had occurred to Garcia Gutierrez.

Garcia Gutierrez renewed his motion to suppress at trial. The district court again denied the motion, and the government later requested that the district court make a determination about whether the agents' entry into the house had been

5

lawful. The court concluded that it was, explaining: "[H]aving heard all the evidence, including the evidence here at trial, I'll make a finding that the entry was based on exigent circumstances."

## B.

"In an appeal of the district court's denial of a defendant's motion to suppress, we review the district court's findings of fact for clear error and its application of the law to those facts de novo." United States v. Luna-Encinas, 603 F.3d 876, 880 (11th Cir. 2010).

"A warrantless entry into a suspect's home to search the premises is presumed to be unreasonable." United States v. Ramirez-Chilel, 289 F.3d 744, 751 (11th Cir. 2002). "A warrantless search is allowed, however, where both probable cause and exigent circumstances exist." United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991). "Recognized situations in which exigent circumstances exist include: 'danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and hot pursuit of a fleeing suspect.'" United States v. Reid, 69 F.3d 1109, 1113 (11th Cir. 1995). "[T]he need to invoke the exigent circumstances exception to the warrant requirement is particularly compelling in narcotics cases because narcotics can be so quickly destroyed." Tobin, 923 F.2d at 1510

6

(quotation marks omitted). The test of whether exigent circumstances exist is an objective one. Id. "The appropriate inquiry is whether the facts . . . would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." Id. (quotation marks omitted).

As an initial matter, Garcia Gutierrez does not argue that the agents lacked probable cause to enter his residence, and thus, although he made that argument as part of his motion to suppress, he has abandoned the argument on appeal. See United States v. Curtis, 380 F.3d 1308, 1310 (11th Cir. 2004) (holding that "an appellant abandons any claim . . . not raised in his initial brief"). Instead, he argues that the agents did not act under exigent circumstances.

We disagree. Given the agents' fear of counter-surveillance and their inability to view the truck or the goings-on in the house, their concern that Garcia Gutierrez or his co-conspirators inside the house could be in the process of destroying the narcotics evidence was an objectively reasonable one. Because the agents had both probable cause and exigent circumstances, the district court did not err in denying the motion to suppress either the physical evidence discovered in the house or the statements that Garcia Gutierrez made to law enforcement.

Moreover, even if we were to assume for the sake of the argument that the agents did not act under exigent circumstances, Garcia Gutierrez has failed to

7

challenge the district court's alternative finding that any taint from an unlawful entry did not extend to the wholly separate incident of Medina Gutierrez's arrest and consent to a search of the house. See United States v. Gupta, 463 F.3d 1182, 1195 (11th Cir. 2006) (holding that "[w]e may decline to address an argument where a party fails to provide arguments on the merits" and that "[w]ithout such argument the issue is deemed waived"). Although Medina Gutierrez's consent to the search could not remove the taint of an illegal entry from the statements made by Garcia Gutierrez to law enforcement, that consent does provide an additional ground for denying the motion to suppress the physical evidence found in the house.

## II.

Garcia Gutierrez also contends that the district court erred in admitting evidence of his two earlier drug convictions. Before trial the government filed a notice under Federal Rule of Evidence 404(b) of its intent to introduce evidence of Garcia Gutierrez's 1989 convictions for conspiracy to distribute in excess of 500 grams of cocaine, possession with intent to distribute in excess of 500 grams of cocaine, and unlawful use of a communication facility. The district court addressed the government's notice at the suppression hearing, concluding that admission of the convictions was proper given that Garcia Gutierrez was putting

8

his knowledge and intent at issue by pleading not guilty to the charges.

When the government offered the convictions at trial, the district court gave the jury a limiting instruction. The court explained that the convictions could be considered only if the jury found beyond a reasonable doubt "that the Defendant did commit the acts charged in the indictment" and only then for the limited purpose of helping to determine "whether the Defendant had the state of mind or intent necessary to commit the crime charged" or "whether the Defendant committed the acts for which he is on trial by accident or mistake." Garcia Gutierrez argues that the admission of his earlier convictions was improper under Federal Rule of Evidence 404(b) because they occurred in 1989, some sixteen years before these events. He argues in the alternative that even if the convictions were not too remote, they were still highly prejudicial and the district court should have excluded them for that reason.

We review a district court's decision to admit evidence pursuant to Rule 404(b) only for an abuse of discretion. United States v. Brown, 587 F.3d 1082, 1091 (11th Cir. 2009). Federal Rule of Evidence 404(b) provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

9

Fed. R. Evid. 404(b).

In reviewing whether the district court properly admitted evidence of a defendant's previous acts under Rule 404(b), we determine (1) whether the evidence was relevant to an issue other than the defendant's character; (2) whether sufficient proof existed so that a jury could determine that the defendant committed the extrinsic act; and (3) whether the probative value of the evidence was not substantially outweighed by its undue prejudice, and whether the evidence met the other requirements of Federal Rule of Evidence 403.  United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003).

Under the first prong, "[a] defendant who enters a not guilty plea makes intent a material issue, imposing a substantial burden on the government to prove intent; the government may meet this burden with qualifying 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue."  United States v. Delgado, 56 F.3d 1357, 1365 (11th Cir. 1995).  Where the extrinsic act involves a conviction and sufficient proof is introduced of that conviction, the second prong of the Rule 404(b) test is established.  See id.  Under the third prong, "[w]hether the probative value of Rule 404(b) evidence outweighs its prejudicial effect depends upon the circumstances."  United States v. Dorsey, 819 F.2d 1055,

10

1061 (11th Cir. 1987). Accordingly, we consider "whether it appeared at the commencement of trial that the defendant would contest the issue of intent, the overall similarity of the charged and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses." United States v. Edouard, 485 F.3d 1324, 1345 (11th Cir. 2007).

The court did not abuse its discretion by admitting evidence of Garcia Gutierrez's earlier drug convictions. Although those convictions did occur in 1989, Garcia Gutierrez contested the issue of intent in this case and the extrinsic convictions were very similar to the charged offenses. See United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005) ("A similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense."); United States v. Diaz-Lizaraza, 981 F.2d 1216, 1224 (11th Cir. 1993) ("[E]vidence of prior drug dealings . . . is highly probative of intent in later charges of conspiracy and distribution of a controlled substance."). Moreover, the district court's limiting instruction mitigated any danger of unfair prejudice that might have resulted from the introduction of the convictions.

### III.

Garcia Gutierrez also contends that the district court erred in denying his

motion for judgment of acquittal. He argues that the evidence at trial was insufficient for the jury to convict him of participation in the drug conspiracy.

"We review de novo the sufficiency of the evidence to support a conviction. In doing so, we look at the record in the light most favorable to the verdict and draw all reasonable inferences and resolve all questions of credibility in favor of the government." United States v. Marte, 356 F.3d 1336, 1344 (11th Cir. 2004) (citation omitted). "We will not overturn a conviction on the grounds of insufficient evidence unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004) (quotation marks omitted). Finally, we "must accept a jury's inferences and determinations of witness credibility." Id.

"A conviction for conspiracy to distribute drugs in violation of 21 U.S.C. § 846 requires evidence that . . . (1) a conspiracy (or agreement) existed between [the defendant] and others; (2) [the defendant] knew the essential objects of the conspiracy, which are to do either an unlawful act or a lawful act by unlawful means; and (3) [the defendant] knowingly and voluntarily participated in the conspiracy." United States v. Westry, 524 F.3d 1198, 1212 (11th Cir. 2008). "[B]ecause a conspiracy is predominantly mental in composition, circumstantial evidence is frequently resorted to in order to prove its elements." Id. (quotation

12

marks omitted). "A conspiracy may be inferred from a concert of action." Id. (quotation marks omitted).

To convict a defendant under 21 U.S.C. § 841(a)(1), the government has to prove that the defendant had (1) knowledge, (2) possession, and (3) intent to distribute. United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989). "All three elements can be proven by either direct or circumstantial evidence." Id. at 1391–92.

The district court did not err in denying Garcia Gutierrez's motion for acquittal. The jury had sufficient evidence to find him guilty beyond a reasonable doubt, including evidence of: (1) the large quantity and high dollar value of the cocaine involved; (2) the presence in his house of drug packaging materials, tools for opening the truck's hidden compartment, a scale, a drug ledger, and a money counter with his fingerprint on it; (3) his suspicious behavior when picking up the drug-laden truck; (4) his inconsistent statements to law enforcement after he was arrested; and (5) his prior drug convictions.

## IV.

Finally, Garcia Gutierrez argues that his trial counsel provided ineffective assistance of counsel. He bases that argument on his counsel's failure to move for a dismissal of the charges on the ground that he was deprived of his right to a

speedy trial and his counsel's failure to object to the relevance of certain evidence introduced at trial.

"We review <u>de novo</u> a claim of ineffective assistance of counsel, which is a mixed question of law and fact." <u>Caderno v. United States</u>, 256 F.3d 1213, 1216-17 (11th Cir. 2001). However, "[w]e will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." <u>United States v. Bender</u>, 290 F.3d 1279, 1284 (11th Cir. 2002). The preferred means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion. <u>Massaro v. United States</u>, 538 U.S. 500, 504–05, 123 S.Ct. 1690, 1694 (2003).

We decline to consider Garcia Gutierrez's ineffective assistance claim because the district court has not had an opportunity to hear the arguments and develop a factual record on the issue.

**AFFIRMED.**